WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CAROL ANN WALLACE,              )
                               )
              Plaintiff,        )    No. CIV 04-492 PHX RCB
                               )
        vs.                     )        O R D E R
                               )
INTEL CORPORATION as            )
Administrator; INTEL CORPORATION )
LONG-TERM DISABILITY BENEFIT    )
PLAN; and MATRIX ABSENCE        )
MANAGEMENT, Inc.,               )
                               )
                               )
              Defendants.       )
_____)

        Plaintiff Carol Ann Wallace challenges the rejection of her

claim for long-term disability ("LTD") benefits under the Intel

Corporation Long-Term Disability Plan (the "Plan" or "LTD Plan").

Following the denial of benefits, and an unsuccessful appeal,

Plaintiff commenced this action pursuant to 29 U.S.C. § 1132 on

March 11, 2004 (doc. # 1).

        On September 28, 2004, the Court issued a scheduling order

(doc. # 20) pursuant to which all dispositive motions in this case

were required to be filed by May 31, 2005.  On May 25, 2005,

Defendants Intel Corporation ("Intel"), Matrix Absence Management, Inc. ("Matrix" or the "Administrator"), and the Plan filed a motion for summary judgment (doc. # 33).  Plaintiff then filed a motion (doc. # 35) seeking an extension of time to file a cross-motion for summary judgment concurrent with her response to Defendants' motion.  The Court granted this request, extending the time for Plaintiff to file her motion until June 24, 2005, on the condition that no reply to any response to that motion would be permitted without further order of the Court.  Order (doc. # 46).  As such, Defendants' pending motion for leave to file a sur-reply in opposition to that enlargement (doc. # 39) is denied and dismissed as moot.

On June 24, 2005, Plaintiff filed her cross-motion for summary judgment and response to Defendants' motion for summary judgment (doc. # 41), and on July 26, 2005, Defendants filed their response to Plaintiff's cross-motion and reply in support of their motion (doc. # 54).  Plaintiff then requested leave to file a reply in support of her motion (doc. # 50).  That request was denied.  Order (doc. # 53).  Having carefully considered the arguments raised by the parties in support of their respective motions for summary judgment, the Court now rules.

**I. BACKGROUND**

Plaintiff began her employment with Intel on June 14, 1999. Defs.' Statement of Facts (doc. # 34) ("DSOF"), Ex. 1 ¶ 2. Suffering from chronic migraine headaches, she took a medical leave of absence and, on October 22, 2001, applied for benefits pursuant to an ERISA Short Term Disability Plan established by Intel.  Id., Ex. 7, Doc. 379.  Her application stated that she experienced

chronic migraine headaches for which she required treatment several times a week.  Id.

On April 12, 2002, Matrix asked Dr. Keith Nachmanson to conduct an independent medical examination ("IME") of Plaintiff, and to provide an evaluation of her disability under the Short-Term Disability Plan.  Id., Ex. 6, Attach. A.  That plan defines "disability" as "any illness or injury that is substantiated by objective medical findings and which renders a participant incapable of performing work."[1]  In his written report of June 13, 2002, Dr. Nachmanson concluded that Plaintiff was "totally disabled from any type of occupation."  Id., Ex. 6, Attach. B at 8.

Prior to applying for benefits under the LTD Plan, claimants are required to exhaust disability benefits under the Short-Term Disability Plan.  Id., Ex. 1 ¶ 5.  Plaintiff's short-term disability benefits were due to expire on October 11, 2002.  See id., Ex. 7, Doc. 318.  On February, 19, 2002, Matrix sent Plaintiff a letter explaining the LTD Plan along with an enclosed application for LTD benefits and forms for her physicians to complete.  Id., Ex. 7, Docs. 318-20.  Matrix sent a second letter and copy of the LTD package on March 21, 2002, and requested a response by April 19, 2002.  Id., Ex. 7, Docs. 316-17.  On September 5, 2002, Matrix received Plaintiff's application for LTD benefits, identifying Drs. Stuart Hetrick, Susan Wojcik, Michael Castillo, and Philip Ku as her treating physicians.  Id., Ex. 7, Doc. 321.  Matrix then sent each of the listed providers the Plan's definitions of "disability"

---

[1]  Unlike the LTD Plan, the Short-Term Disability Plan does not separately define the phrase "objective medical findings."

1  and "objective medical findings," and requested information to aid

2  its determination of Plaintiff's eligibility for LTD benefits.

3  Id., Ex. 7, Docs. 293-98, 304-06.   Matrix also transmitted a

4  Physical Capacities Assessment Form for each provider to complete,

5  and requested all medical records for the period of October 15,

6  2001 through Plaintiff's last office visit.   Id., Ex. 7, Docs. 300-

7  03.  All medical documents received before December 1, 2002 were

8  included in the claim file.  See id., ¶¶ 20-21; id., Ex. 7, Docs.

9  6-183.

10      The LTD Plan defines disability as "any illness or injury that

11  is substantiated by objective medical findings."  DSOF, Ex. 1,

12  Attach. A at 1.   The phrase "objective medical findings" is further

13  defined as follows:

14          "Objective Medical Findings" means a measurable
            abnormality which is evidenced by one or more standard
15          medical diagnostic procedures including laboratory tests,
            physical examination findings, X-rays, MRI's, EEG's,
16          "Catscans" or similar tests that support the existence of
            a disability or indicate a functional limitation. . . .
17          To be considered an abnormality, the test result must be
            clearly recognizable as out of the range of normal for a
18          healthy population; the significance of the abnormality
            must be understood and accepted by the medical community.
19

20  Id. at 4.  As the administrator and fiduciary of the Plan, Intel

21  has "the sole discretion to interpret the terms of the Plan and to

22  determine eligibility for benefits."  Id. at 13.  Pursuant to a

23  provision of the Plan allowing Intel to delegate certain fiduciary

24  responsibilities, Intel delegated its authority in these areas to

25  Matrix in a written Service Agreement.  Id., Ex. 1, Attach. A at

26  14; id., Ex. 2, Attach. A at 1-4.

27      Based on the information before it, Matrix concluded that

28  Plaintiff's file did not support the finding of a "disability"

- 4 -

substantiated by "objective medical findings" as those terms are
defined in the Plan.  Id., Ex. 7, Docs. 240-46.  Matrix explained
this as the reason for its denial in a letter dated December 2,
2002, which reviewed Plaintiff's medical history and the operative
terms of the Plan.  See id., Ex. 7, Docs. 240-43.  In that letter,
Matrix also apprised Plaintiff of her right to appeal the denial
decision, and provided her a copy of Intel's disability appeal
procedure.  Id., Ex. 7, Docs. 240-46.  Under the appeal procedure,
a claimant may appeal an adverse benefit determination within 180
days of the Administrator's decision.  Id., Ex. 7, Doc. 244.

On December 10, 2002, Plaintiff notified Matrix of her
decision to appeal its decision, and requested a thirty-day
extension of time in which to submit additional documents for the
Appeals Committee's (the "Committee") consideration.  Id., Ex. 7,
Docs. 262-63.  Matrix granted the requested extension of time.
Id., Ex. 7, Docs. 255-59.  A second extension was granted on
January 8, 2003, extending the deadline to February 12, 2003.  Id.,
Ex. 7, Docs. 247-48.  During this time, Plaintiff submitted a
letter from Dr. Castillo, a list of medications dated February 11,
2003, a Physical Capacities Assessment Form by Dr. Castillo, and a
letter from Dr. Muriel McClellan.  Id., Ex. 7, Docs. 190-201.

On December 23, 2002, Matrix requested an independent review
of Plaintiff's claim file by a neurologist selected by CORE, an
independent clearinghouse for medical peer reviews with no
affiliation with either Matrix or Intel.  Id., Ex. 7, Docs. 249-50.
The Peer Review Analysis Case Report of Dr. Dennis Nitz
acknowledged Dr. Walker's findings of hypomobility and spasm on the
left side of Plaintiff's upper cervical spine, as well as X-ray

indications of facet arthrosis in the lumbar spine, but noted that Plaintiff's neurological examinations and MRI's produced normal results.  Id., Ex. 7, Docs. 2-5.  Based on his review of the claim file, Dr. Nitz concluded that "[Plaintiff's] subjective complaints are not corroborated by any significant objective findings."  Id., Ex. 7, Doc. 4.

On February 20, 2003, the Committee reviewed the original claim file, Dr. Nitz's independent peer review report, as well as all documents received from Plaintiff prior to that date.  Id., Ex. 2 ¶ 19.  The Committee determined that Matrix's initial denial of benefits was proper, because the record did not present evidence of a "disability" substantiated by "objective medical findings" as those terms are defined in the Plan.  Id., Ex. 2, Attach. C.  As before, the Committee explained this as the basis for its decision in a letter dated March 11, 2003 reviewing Plaintiff's medical history and the operative terms of the Plan.  Id.  This letter also apprised Plaintiff of her rights under ERISA.  Id.

On March 11, 2004, Plaintiff filed a complaint (doc. # 1) in this Court, later amended on August 9, 2004 (doc. # 14), seeking retrospective and prospective relief under 29 U.S.C. § 1132.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate "when there is no genuine issue of material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  In determining whether to grant summary judgment, a district court must view the underlying facts and the inferences to be drawn from those facts in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

1    If a party will bear the burden of proof at trial as to an

2    element essential to its claim, and fails to adduce evidence

3    establishing a genuine issue of material fact with respect to the

4    existence of that element, then summary judgment is appropriate.

5    See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Not

6    every factual dispute is capable of defeating a properly supported

7    motion for summary judgment.  Rather, the party opposing the motion

8    must show that there is a genuine issue of material fact.  See

9    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A

10   factual dispute is genuine if the evidence is such that a rational

11   trier of fact could resolve the dispute in favor of the nonmoving

12   party.  Id. at 248.  A fact is material if determination of the

13   issue might affect the outcome of the case under the governing

14   substantive law.  Id.  Thus, a party opposing a motion for summary

15   judgment cannot rest upon bare allegations or denials in the

16   pleadings, but must set forth specific facts demonstrating a

17   genuine issue for trial.  See id. at 250.  If the nonmoving party's

18   evidence is merely colorable or not significantly probative, a

19   court may grant summary judgment.  See id. at 249; accord Cal.

20   Architectural Build. Prods., Inc. v. Franciscan Ceramics, 818 F.2d

21   1466, 1468 (9th Cir. 1987).

22   Finally, the fact that both parties have moved for summary

23   judgment does not alter these standards.  "It is well settled that

24   a court's duty to ascertain whether facts remain in contention is

25   not obviated by cross motions for summary judgment."  Eby v. Reb

26   Realty, Inc., 495 F.2d 646, 649 (9th Cir. 1974).

27   . . .

28

1  III. DISCUSSION

2      A. Standard of Judicial Review in § 1132 Actions

3      Although ERISA creates private rights of action allowing plan

4  participants and beneficiaries to challenge benefit eligibility

5  determinations, the statute does not set out the standard of

6  judicial review for such actions.  See 29 U.S.C. § 1132.  While

7  many federal courts initially filled this gap by adopting the

8  deferential arbitrary and capricious standard of review applied in

9  actions under the Labor Management Relations Act, see, e.g., Jung

10  v. FMC Corp., 755 F.2d 708, 711-12 (9th Cir. 1985), the Supreme

11  Court has since stated that the determination of the appropriate

12  standard of for § 1132 actions should be guided by principles of

13  trust law.  See Firestone Tire & Rubber, Co. v. Bruch, 489 U.S.

14  101, 107-111 (1989).  Thus, if a plan confers discretion on its

15  administrator to interpret the plan's terms or to make benefit

16  eligibility determinations, the administrator's decisions are

17  entitled to deference, and are reviewed for abuse of discretion.

18  Id. at 111-15.  Absent such discretionary authority, courts must

19  review the administrator's decisions de novo.  Id. at 115.

20      However, even if a plan administrator has discretionary

21  authority, a court may engage in a more searching review if the

22  administrator's decision was tainted by a conflict of interest.

23  Id.  "Because the great deference accorded a plan administrator

24  arises in part from the assumption of trust law that the trustee

25  has no pecuniary interest in his decisions, proof that the trustee

26  does have such interest correspondingly strengthens the court's

27  level of review."  Bogue v. Ampex Corp., 976 F.2d 1319, 1325, n.29

28  (9th Cir. 1992).  In Firestone, the Supreme Court noted that if an

administrator is "operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115 (internal quotations omitted).  The Ninth Circuit has interpreted this language as requiring "heightened scrutiny" of decisions made by conflicted plan administrators.  Atwood v. Newmont Gold Co., 45 F.3d 1317, 1322 (9th Cir. 1995).

The Ninth Circuit has repeatedly used a two-part test in deciding whether to invoke "heightened scrutiny," noting that the appearance of conflict alone is not sufficient.  See, e.g., Friedrich v. Intel Corp., 181 F.3d 1105 at 1109-10 (9th Cir. 1999).  First, the beneficiary must produce "material, probative evidence" tending to show that the administrator's apparent conflict actually caused a breach of a fiduciary duty owed to the beneficiary.  Atwood, 45 F.3d at 1322.  If the beneficiary makes this showing, the burden shifts to the plan administrator to demonstrate that its decision was not tainted by the apparent conflict.  Id.  If the plan fails to meet its burden, the administrator's decision is reviewed de novo.  Id.

In their respective motions for summary judgment, Plaintiff argues for de novo review of her § 1132 claim under the "heightened scrutiny" test, while Defendants argue for more deferential review under the abuse of discretion standard.  Pl.'s Mot. (doc. # 41) at 15-18; Defs.' Mot. (doc. # 33) at 9-10.  In order to succeed on summary judgment in establishing "heightened scrutiny" as the appropriate standard of review, Plaintiff must adduce "material, probative evidence" that Matrix's denial decision was colored by conflict, and this evidence must go unrebutted by Matrix.

Likewise, to succeed on summary judgment in establishing abuse of discretion as the appropriate standard of review, Matrix must show that (1) the Plan vests it with discretionary authority in construing the Plan's terms and making benefits determinations, and (2) Plaintiff has failed to establish a genuine issue of material fact as to whether its denial decision was colored by conflict. See Celotex Corp., 477 U.S. at 322-23.

In the present case, it is uncontested that the Plan grants Intel, the named fiduciary for plan administration, the discretion to interpret the terms of the Plan and to determine eligibility for benefits. DSOF ¶ 2; Pl.'s Controverting Statement of Facts (doc. # 43) ("PCSOF") ¶ 2. Nevertheless, Plaintiff contends that the Court should invoke "heightened scrutiny," because Intel's dual role as plan administrator and sponsor poses an inherent conflict of interest.[2] Pl.'s Mot. (doc. # 41) at 15-18. Plaintiff argues that there is ample evidence that this apparent conflict influenced the denial of benefits, because (1) Matrix failed to provide

---

[2]   In an effort to preclude any inquiry into "heightened scrutiny," Defendants argue that Intel's dual role as plan sponsor and administrator fails to manifest even an appearance of conflict, because Intel had contractually delegated its authority to review claims and grant plan benefits to Matrix. Reply (doc. # 54) at 5-6. Defendants cite no law in support of this view. Although a similar question was raised in Eley v. Boeing Co., 945 F.2d 276 (9th Cir. 1991), the Ninth Circuit decided that case on separate grounds, leaving the issue unresolved. See id. at 278. In the present case, it is sufficient to note that Intel's delegation of authority to Matrix does not negate the appearance of conflict, because Intel's financial influence over Matrix under the Service Agreement renders Matrix susceptible to the taint of Intel's conflict. See DSOF, Ex. 2, Attach. 1 at 3 (providing for payment by Intel of $294,356 in fees to Matrix during the initial one-year term of the Service Agreement). Accordingly, the fact of Intel's contract with Matrix is more appropriately considered as one factor in determining whether the Administrator's decision was actually tainted by conflict.

1  Plaintiff's complete medical records to Dr. Nachmanson, and

2  subsequently relied on his IME report in reaching its decision; (2)

3  Matrix did not correctly interpret and apply the Plan's definitions

4  of "disability" and "objective medical findings" in reaching its

5  decision; and (3) Matrix failed to consider Plaintiff's Social

6  Security Disability award in considering Plaintiff's eligibility

7  for benefits.  Id. at 17-18.

8      **1. Provision of Limited Records to IME Physician**

9      Plaintiff asserts that Matrix's limited provision of medical

10 records to Dr. Nachmanson is similar to Intel's conduct in

11 Friedrich, where the Ninth Circuit affirmed the district court's

12 application of de novo review based, in part, on the administrative

13 record's lack of written reports by the beneficiary's treating

14 physicians.  Id. at 15; see Friedrich, 181 F.3d at 1110.

15     However, the claim administration problems in Friedrich ran

16 much deeper than the quantum of information made available to IME

17 physicians, and the quality of information considered by the plan

18 administrator.  In Friedrich, the Ninth Circuit observed the

19 following additional evidence of conflict: (1) Intel failed to give

20 Friedrich a LTD claim packet that would have put him on notice of

21 the application requirement and the criteria for benefits

22 determinations; (2) Intel provided Friedrich with insufficient

23 notice of the denial of his claim; and (3) Intel's review procedure

24 unfairly deprived Friedrich of the opportunity to demonstrate

25 disability.  Id.  Indeed, a review of the district court's factual

26 findings reveals the extent to which Intel's apparent conflict

27 infected its claim handling in that particular case:

28 ...

> On February 19, 1993, [the plan administrator] wrote a letter to Friedrich notifying him that he was not eligible for Long Term Disability Benefits based upon her review of his medical records, and told him that his [short term disability] benefits would cease in May 1993. . . . <u>Friedrich had not even applied for Long Term Disability benefits when Intel deemed him to have applied and then denied such benefits without even telling him whether Intel needed more information before it could make a reasoned decision as to his entitlement</u>.

<u>Friedrich v. Intel Corp.</u>, 21 Employee Benefits Cases (BNA) 2203, 2205 (E.D. Cal. 1997) (emphasis added).

Although Plaintiff claims that Matrix's failure to provide Dr. Nachmanson with her complete medical records prior to his IME "is similar to the action taken be Intel" in <u>Friedrich</u>, <u>see</u> Pl.'s Mot. (doc. # 41) at 17, the instant case lacks many of the disturbing details that informed the court's finding of conflict in <u>Friedrich</u>. Unlike Intel's conduct in <u>Friedrich</u>, Matrix twice notified Plaintiff of her opportunity to file her claim for LTD benefits, and both times furnished her with a claim filing packet detailing the Plan's terms and eligibility criteria.  <u>Id.</u>, Ex. 7, Docs. 318-20, 316-17.  In addition, Matrix solicited and considered numerous other medical records, including written reports from Plaintiff's treating physicians.  <u>Id.</u>, Docs. 293-98, 304-06.  Dr. Nachmanson's report was only one of many reports reviewed and relied upon by Matrix.  Moreover, Matrix initially requested Dr. Nachmanson's IME report to confirm Plaintiff's eligibility for <u>short-term</u> disability benefits, not LTD benefits, and the report was actually favorable to Plaintiff in that regard by finding her eligible.  <u>See</u> DSOF, Ex. 2 ¶ 9; <u>id.</u>, Ex. 6, Attach. B.  Therefore, Matrix's failure to furnish Dr. Nachmanson with Plaintiff's complete records at the time of his evaluation does not tend to show that Matrix breached

1    any fiduciary duty owed to Plaintiff.

2         Alternatively, Plaintiff's argument may be fairly interpreted

3    as suggesting that Matrix's failure to provide her complete medical

4    records to Dr. Nachmanson evinces an effort to sculpt the

5    administrative record and thereby justify its denial of LTD

6    benefits.  However, this argument also fails.  Apparently, to avoid

7    the appearance of conflict under this theory, Matrix should either

8    have excluded the initial IME report from the file when reviewing

9    Plaintiff's application for LTD benefits, or ordered a new IME for

10   determining eligibility for LTD benefits.  Of course, Matrix was

11   under no obligation to do either.  Indeed, it would have been more

12   troubling had Matrix excluded Dr. Nachmanson's report, as the

13   report was actually favorable with respect to Plaintiff's

14   eligibility for short term disability benefits.

15        Therefore, the Court concludes that no reasonable trier of

16   fact could find that Matrix's omission amounted to "material,

17   probative evidence" of a decision tainted by conflict.

18        **2. Erroneous Interpretation and Application of Plan Terms**

19        Plaintiff claims that Matrix strayed from the Plan's terms by

20   premising its denial letter on a lack of "substantial"[3] findings,

21   rather than a lack of "objective medical findings," arguing that

22   this proves that the denial was colored by conflict.  Pl.'s Mot.

23

24        [3]  There is no mention of "substantial" findings anywhere in
     Matrix's letter-- only a statement that "[t]he Plan requires that a
25   Participant's inability to work be substantiated by objective medical
     findings as defined in the Plan document."  Id. at 242 (emphasis
26   added).  Properly understood, this phrase does not reflect a
     subjective standard as Plaintiff suggests, see Pl.'s Mot. (doc. # 41)
27   at 17-18, but merely reiterates the Plan's definition of
     "disability."  See DSOF, Ex. 7 at 240, 242; DSOF, Ex. 1, Attach. 1 at
28   1-2.

1  (doc. # 41) at 17-18.  The evidence repudiates this.  Matrix's

2  denial letter not only quotes the Plan's definition of "objective

3  medical findings," but states that the claim was denied because the

4  Administrator had "determined that <u>objective medical findings</u> do

5  not support a disability as defined by the Plan . . . ."  DSOF, Ex.

6  7 at 240-242. (emphasis added).

7      Alternatively, Plaintiff argues that Matrix "deliberately

8  ignored or inadequately considered the evidence of record" in

9  determining that there were no "objective medical findings" to

10  substantiate her disability.  Pl.'s Mot. (doc. # 41) at 17.  In

11  particular, she notes that an abnormal polysomnography report

12  demonstrates the existence of severe obstructive sleep disordered

13  breathing, and claims that her X-ray and MRI present evidence of

14  straightening of the cervical lordosis caused by muscled spasms[4]--

15  all of which Dr. Nachmanson has opined to be objective findings

16  substantiating chronic cervicogenic headaches.  <u>Id.</u> at 13; <u>id.</u>,

17  App. 18 at 12-13, 19-20.  For the following reasons, the Court does

18  not agree that Matrix's review of the record was so inadequate as

19  to establish a breach of fiduciary duty to Plaintiff.

20      First, Plaintiff's abnormal polysomnography report was not

21  obtained until February 14, 2004-- <u>after</u> the Committee had reviewed

22  her appeal-- and therefore, was never part of the administrative

23

24      [4]  Plaintiff also notes that she had an elevated SED rate, but
admits that the elevation, according to her neurologist's finding, is
25  not significant.  <u>See</u> Pl.'s Mot. (doc. # 41) at 12, n.3, 13.  Under
the Plan, "objective medical findings" must be "clearly recognized as
26  out of range for a normal healthy population."  DSOF, Ex. 1, Attach.
A at 1, 4.  Therefore, it does not appear that her elevated SED rate
27  would constitute an "objective medical finding" under the Plan so as
to support the claim that Matrix inadequately considered the evidence
28  of record.

1    record.  Compare id., App. 12 (polysomnography indicating mild

2    obstructive sleep disordered breathing conducted on April 17, 2002)

3    with id., App. 16 (polysomnography indicating severe obstructive

4    sleep disordered breathing conducted on February 14, 2004).

5    Because Plaintiff's argument takes issue with Matrix's allegedly

6    inadequate consideration of the "evidence of record," the Court

7    finds it entirely appropriate to limit its review to the

8    administrative record in evaluating this argument.[5]  It is too

9    obvious to merit extended discussion why Matrix could not

10   reasonably have been expected to consider a report that did not

11   even exist at the time of its review.

12        Second, as to the X-ray and MRI images showing straightening

13   of the cervical lordosis, the administrative record appears at best

14   to be conflicted as to whether those studies present "objective

15   medical findings" substantiating a disability.  Even Plaintiff's

16   treating physicians disagreed on the issue.  For example, Dr.

17   Castillo concluded that these studies presented "objective medical

18   findings" of Plaintiff's incapacitating headaches, while Dr.

19   _____

20        [5]  The Court's review in an ERISA action is not axiomatically
     limited to the administrative record.  Although Defendants correctly
21   note that evidence outside the administrative record is irrelevant to
     whether an administrator abused its discretion, this rule is
22   predicated on the Court's adoption of the abuse of discretion
     standard.  See Reply (doc. # 54) at 16; Taft v. Equitable Life
23   Assurance Soc'y, 9 F.3d 1469, 1471-72 (9th Cir. 1993) (the rule
     avoids the anomalous conclusion that an administrator abused its
24   discretion by failing to consider evidence that was never before it).
     The Court is therefore not limited to the administrative record in
25   its "heightened scrutiny" analysis, which inherently precedes any
     determination that the plan administrator is entitled to deferential
26   review.  Tremain v. Bell Indus., Inc., 196 F.3d 970, 976-77 (9th Cir.
     1999).  In the instant case, however, Plaintiff argues that Matrix
27   inadequately considered the evidence of record, requiring the Court
     to limit its review to the administrative record.
28

1  Hetrick found that "[n]one of these studies were able to provide a
2  clue of the etiology of her head pain."  PCSOF, App. 3; DSOF, Ex. 7
3  at 16.  The fact that Matrix apparently did not give as much weight
4  to the report most favorable to the claimant does not, by itself,
5  suggest that it reviewed the record with a deliberately blind eye
6  bent on denying the claim.  To hold otherwise, would invite
7  "heightened scrutiny" in nearly every case in which a plan
8  administrator reaches a decision adverse to the claimant.  Such an
9  extension of "heightened scrutiny" would swallow the rule of
10 Firestone, in which the Supreme Court established abuse of
11 discretion as the standard of review for decisions of
12 administrators vested with discretionary authority.  Furthermore,
13 the mere fact of an adverse decision does not, by itself, establish
14 breach of fiduciary duty.  See Atwood, 45 F.3d at 1323.

15      Therefore, the Court cannot conclude that Matrix's allegedly
16 inadequate consideration of the evidence of record constitutes
17 "material, probative evidence" tending to show that its decision
18 was swayed by an apparent conflict of interest.

19      **3. Failure to Consider Social Security Disability Award**

20      Finally, Plaintiff argues that Matrix's failure to consider
21 her Social Security disability award is evidence that Matrix's
22 denial decision was swayed by self interest.  Pl.'s Mot. (doc. #
23 41) at 18.  This argument is unpersuasive for two reasons.

24      First, Plaintiff cites Riedl v. General Am. Life Ins. Co., 248
25 F.3d 753 (8th Cir. 2001) for the proposition that courts have held
26 that a Social Security disability award "should be considered by
27 [an] insurer."  Pl.'s Mot. (doc. # 41) at 18 (emphasis added).
28 Plaintiff construes Riedl too broadly.  In Riedl, the court merely

1   stated that "[a]lthough the Social Security Administration's

2   determination is not binding, it is admissible evidence to support

3   an ERISA claim."  See Riedl, 248 F.3d at 759, n.4.  The statement,

4   appearing in footnote, does not impose an affirmative obligation on

5   either the courts or plan administrators to consider such evidence

6   in every ERISA case.[6]  The statement is not even directed toward

7   plan administrators.  Rather, the remark simply affirmed the

8   admissibility of evidence, which the court considered in applying

9   the de novo standard of review.  See id. at 756, 759, n.4.

10  Furthermore, the court adopted the de novo standard in that case,

11  because the administrator lacked discretionary authority under the

12  plan, and not because of any evidence that it acted as a conflicted

13  fiduciary.[7]  See id. at 755-56.  Therefore, there is nothing in

14  Riedl to suggest that an administrator should consider a Social

15  Security disability award in determining eligibility for plan

16  benefits, or that the failure to do so would constitute a breach of

17  fiduciary duty.

18      Although Riedl does not establish a basis for applying

19  "heightened scrutiny," the Court considers independently whether

20  Matrix's failure to consider Plaintiff's Social Security disability

21  award constitutes material evidence of a conflicted fiduciary.  Due

22

23      [6]  Likewise, no such mandatory duty arises under the earlier
24  Eighth Circuit case upon which Riedl relied.  See Duffie v. Deere &
    Co., 111 F.3d 70, 74, n.5 (observing that findings of the Social
25  Security Administration are admissible, but not binding, in ERISA
    cases).

26
    [7]  Similarly in Duffie, the predecessor case to Riedl, the Eighth
27  Circuit found that de novo review should apply, because the
    administrator lacked discretion, and not because of any apparent
28  conflict.  See Duffie, 111 F.3d at 72.

to notable differences between the Social Security Act and the
Plan, the Court finds that it does not.  For example, while mental
impairment may be a basis for Social Security disability benefits,
it is specifically excluded from eligibility under the Plan.[8]  See
42 U.S.C. § 423(d); see also DSOF, Ex. 1, Attach. A at 5-6.
Moreover, Social Security disability benefits determinations are
made in view of the combined effect of all impairments from which
an individual may suffer.  See 42 U.S.C. § 423(d).  This cumulative
approach is precluded by the Plan's narrower definition of
disability in the singular as "any illness or injury that is
substantiated by objective medical findings."  See DSOF, Ex. 1,
Attach. A at 1.

In light of the differences between the Plan and the Social
Security Act, the Court cannot find Matrix's failure to consider
Plaintiff's Social Security Award to be "material, probative
evidence" that it acted as a conflicted fiduciary in denying her
claim.  There is simply no requirement that a plan administrator,
vested with discretionary authority in its determinations, must
give weight to factual findings made by different bodies under
disparate standards in order to shield its own determination from
more searching review by the courts.

All of Plaintiff's foregoing arguments, considered
independently or together, fail to raise any genuine issue of
material fact as to whether Matrix's decision was infected by
conflict, and so, do not satisfy her initial burden under the Ninth

_____

[8]  In noting this distinction, the Court makes no finding as to
whether Plaintiff's cervicogenic headaches constitute a physical or
mental impairment.

Circuit's "heightened scrutiny" test.  Furthermore, because it is undisputed that the Plan grants discretionary authority to the Administrator in construing the Plan's terms and determining eligibility for benefits, the Court finds that it is appropriate to adopt the abuse of discretion standard on Defendants' motion for summary judgment.

**B. Whether Matrix Abused Its Discretion**

An ERISA plan administrator abuses its discretion if (1) it renders a decision without any explanation, (2) it construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) it relies on clearly erroneous findings of fact in making benefit determinations.  <u>Taft</u>, 9 F.3d at 1472-73.  Because an administrator cannot abuse its discretion by failing to consider evidence that was never before it, the district court's review is limited to evidence that was part of the administrative record.  <u>Id.</u> at 1471-72.  For the reasons below, the Court finds that there is no genuine issue of material fact on the issue of whether Matrix abused its discretion in determining Plaintiff's eligibility for LTD benefits.

First, Matrix's detailed denial letter of December 2, 2002 clearly sets forth the reasons for its decision by reviewing Plaintiff's medical history and the operative terms of the Plan in three-and-a-half single-spaced pages.  DSOF, Ex. 7 at 240-43. Likewise, the Appeals Committee's written letter of March 11, 2003 affirming that decision similarly explains the basis for the denial.  <u>Id.</u>, Ex. 2, Attach. C at 1-4.  Therefore, it cannot be said that Matrix abused its discretion by rendering a decision without explanation.

1     Second, Matrix's conclusion that Plaintiff was not disabled

2   did not conflict with the plain language of the Plan.  The LTD Plan

3   defines disability as "any illness or injury that is substantiated

4   by objective medical findings."  DSOF, Ex. 1, Attach. A at 1.  The

5   phrase "objective medical findings" is further defined as follows:

6           "Objective Medical Findings" means a measurable
            abnormality which is evidenced by one or more standard
7           medical diagnostic procedures including laboratory tests,
            physical examination findings, X-rays, MRI's, EEG's,
8           "Catscans" or similar tests that support the existence of
            a disability or indicate a functional limitation. . . .
9           To be considered an abnormality, the test result must be
            clearly recognizable as out of the range of normal for a
10          healthy population; the significance of the abnormality
            must be understood and accepted by the medical community.
11

12  Id. at 4 (emphasis added).  As discussed in Part II.A.3, supra,

13  there was ample evidence in the record to support Matrix's

14  conclusion that there were no "objective medical findings" as

15  defined in the plan.  For instance, although Plaintiff had

16  undergone MRI's, spinal taps, and other laboratory studies, Dr.

17  Hetrick, admitted in his October 15, 2002 letter that "[n]one of

18  these studies were able to provide a clue of the etiology of her

19  head pain."  DSOF, Ex. 7 at 16.  Indeed, many of her test results

20  at the time of Matrix's review were within normal limits, and thus,

21  not indicative of a "measurable abnormality."  For example, her

22  comprehensive metabolic panel yielded results within the reference

23  range, and in a report dated July 11, 2002, Dr. Hetrick noted that

24  her brain MRI was "entirely within normal limits."  Id. at 32, 50.

25  Accordingly, there is no indication that Matrix abused its

26  discretion by departing from the plain terms of the Plan.

27     Finally, there is no indication that Matrix relied on clearly

28  erroneous findings of fact in reaching its decisions.  Plaintiff

1  does not dispute the validity or accuracy of the evidence in the

2  record.  Instead, she argues that Matrix "ignored or inadequately

3  considered the evidence" in determining that there were no

4  "objective medical findings."[9]  Pl.'s Mot. (doc. # 41) at 17.  To

5  prevail on this argument, Plaintiff must show either (1) that the

6  administrative record is at least substantially inconsistent with

7  Matrix's conclusion, or (2) that the evidence upon which Matrix

8  relied was clearly erroneous.  Neither is the case here.  First, as

9  discussed above, the administrative record contains ample evidence

10  to support Matrix's conclusion that Plaintiff's chronic migraine

11  headaches were not substantiated by "objective medical findings."

12  Second, the Court has thoroughly reviewed the administrative record

13  submitted by the parties, and cannot say that the factual findings

14  were so clearly erroneous that Matrix abused its discretion in

15  relying on them.

16      Because Plaintiff has failed to establish a genuine issue of

17  material fact as to whether Matrix abused its discretion in denying

18  her LTD benefits, the Court must grant Defendant's motion for

19  summary judgment.

20  **IV. CONCLUSION**

21      In light of the forgoing analysis,

22      IT IS ORDERED that Defendants' motion for leave to file sur-

23  reply to Plaintiff's reply to Defendants' response to Plaintiff's

---

25  [9] Although Plaintiff initially raised this argument in an effort
    to show a conflict of interest under the "heightened scrutiny" test,
26  see Pl.'s Mot. (doc. # 41) at 17, she has also argued that she should
    prevail under the abuse of discretion standard of review.  See id. at
27  18.  Therefore, the Court will also construe this as an argument that
    Matrix abused its discretion by relying on clearly erroneous findings
28  of fact in denying Plaintiff benefits.

1  motion of an extension of time to file her cross-motion for summary
2  judgment (doc. # 39) is DENIED and dismissed as moot.
3       IT IS FURTHER ORDERED that Defendants' motion for summary
4  judgment (doc. # 33) is GRANTED.
5       IT IS FURTHER ORDERED that Plaintiff's motion for summary
6  judgment (doc. # 41) is DENIED.
7       IT IS FURTHER ORDERED directing the Clerk of Court to enter
8  judgment in favor of Defendants and terminate this case.
9       DATED this 12th day of December, 2005.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record