WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CAROL ANN WALLACE,                    )
                                      )
                Plaintiff,            )    No. CIV 04-492 PHX RCB
                                      )
        vs.                           )       O R D E R
                                      )
INTEL CORPORATION as                  )
Administrator; INTEL CORPORATION      )
LONG-TERM DISABILITY BENEFIT          )
PLAN; and MATRIX ABSENCE              )
MANAGEMENT, Inc.,                     )
                                      )
                                      )
                Defendants.           )
_____)

     This matter arises out of an action brought pursuant to the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1132, by Plaintiff Carol Ann Wallace to challenge the rejection

of her claim for long-term disability ("LTD") benefits under the

Intel Corporation Long-Term Disability Plan (the "Plan" or "LTD

Plan") for her chronic migraine headaches.  After her initial

denial of benefits, and an unsuccessful appeal, Plaintiff filed a

Complaint (doc. # 1) on March 11, 2004 against Defendants Intel

Corporation ("Intel"), Matrix Absence Management, Inc. ("Matrix" or

the "Administrator"), and the Plan.  The parties filed cross-motions for summary judgment (doc. ## 33, 41), and on December 12, 2005 the Court issued an order (doc. # 58) denying Plaintiff's motion (doc. # 41) and granting Defendants' motion (doc. # 33). Judgment was entered accordingly the same day.  Judgment (doc. # 59).  Plaintiff now seeks reconsideration of the Court's December 12 order and judgment.  Mot. (doc. # 60).  Having carefully considered the arguments raised, the Court now rules.

**I.   BACKGROUND**

Plaintiff began her employment with Intel on June 14, 1999. Defs.' Statement of Facts (doc. # 34) ("DSOF"), Ex. 1 ¶ 2. Suffering from chronic migraine headaches, she took a medical leave of absence and, on October 22, 2001, applied for benefits pursuant to an ERISA Short Term Disability Plan established by Intel.  Id., Ex. 7, Doc. 379.  Her application stated that she experienced chronic migraine headaches for which she required treatment several times a week.  Id.

On April 12, 2002, Matrix asked Dr. Keith Nachmanson to conduct an independent medical examination ("IME") of Plaintiff, and to provide an evaluation of her disability under the Short-Term Disability Plan.  Id., Ex. 6, Attach. A.  That plan defines "disability" as "any illness or injury that is substantiated by objective medical findings and which renders a participant incapable of performing work."[1]  In his written report of June 13, 2002, Dr. Nachmanson concluded that Plaintiff was "totally disabled from any type of occupation."  Id., Ex. 6, Attach. B at 8.

---

[1]   Unlike the LTD Plan, the Short-Term Disability Plan does not separately define the phrase "objective medical findings."

The LTD Plan defines disability as "any illness or injury that is substantiated by objective medical findings."  DSOF, Ex. 1, Attach. A at 1.  The phrase "objective medical findings" is further defined as follows:

> "Objective Medical Findings" means a measurable abnormality which is evidenced by one or more standard medical diagnostic procedures including laboratory tests, physical examination findings, X-rays, MRI's, EEG's, "Catscans" or similar tests that support the existence of a disability or indicate a functional limitation. . . .  To be considered an abnormality, the test result must be clearly recognizable as out of the range of normal for a healthy population; the significance of the abnormality must be understood and accepted by the medical community.

Id. at 4.  As the administrator and fiduciary of the Plan, Intel has "the sole discretion to interpret the terms of the Plan and to determine eligibility for benefits." Id. at 13.  Pursuant to a provision of the Plan allowing Intel to delegate certain fiduciary responsibilities, Intel delegated its authority in these areas to Matrix in a written Service Agreement.  Id., Ex. 1, Attach. A at 14; id., Ex. 2, Attach. A at 1-4.

Prior to applying for benefits under the LTD Plan, claimants are required to exhaust disability benefits under the Short-Term Disability Plan.  Id., Ex. 1 ¶ 5.  Plaintiff's short-term disability benefits were due to expire on October 11, 2002.  See id., Ex. 7, Doc. 318.  On February, 19, 2002, Matrix sent Plaintiff a letter explaining the LTD Plan along with an enclosed application for LTD benefits and forms for her physicians to complete.  Id., Ex. 7, Docs. 318-20.  Matrix sent a second letter and copy of the LTD package on March 21, 2002, and requested a response by April 19, 2002.  Id., Ex. 7, Docs. 316-17.  On September 5, 2002, Matrix

1   received Plaintiff's application for LTD benefits, identifying Drs.

2   Stuart Hetrick, Susan Wojcik, Michael Castillo, and Philip Ku as

3   her treating physicians.  Id., Ex. 7, Doc. 321.

4        Matrix then sent each of the listed providers the Plan's

5   definitions of "disability" and "objective medical findings," and

6   requested information to aid its determination of Plaintiff's

7   eligibility for LTD benefits.  Id., Ex. 7, Docs. 293-98, 304-06.

8   Matrix also transmitted a Physical Capacities Assessment Form for

9   each provider to complete, and requested all medical records for

10  the period of October 15, 2001 through Plaintiff's last office

11  visit.  Id., Ex. 7, Docs. 300-03.  Plaintiff's treating physician,

12  Dr. Stuart Hetrick, did not offer a direct opinion on the presence

13  of "objective medical findings," but noted that "[n]one of the[]

14  studies were able to provide a clue of the etiology of . . .

15  [Plaintiff's] head pain."  DSOF, Ex. 7 at 16.  Only Dr. Michael

16  Castillo expressly stated that, in his opinion, the studies

17  presented "objective medical findings" of Plaintiff's

18  incapacitating headaches.  Pl.'s Controverting Statement of Facts

19  (doc. # 43) ("PCSOF"), App. 3.  All medical documents received

20  before December 1, 2002 were included in the claim file.  See DSOF,

21  ¶¶ 20-21; id., Ex. 7, Docs. 6-183.

22       Based on the information before it, Matrix concluded that

23  Plaintiff's file did not support the finding of a "disability"

24  substantiated by "objective medical findings" as those terms are

25  defined in the Plan.  Id., Ex. 7, Docs. 240-46.  Matrix explained

26  this as the reason for its denial in a letter dated December 2,

27  2002, which reviewed Plaintiff's medical history and the operative

28  terms of the Plan.  See id., Ex. 7, Docs. 240-43.  In that letter,

-4-

Matrix also apprised Plaintiff of her right to appeal the denial decision, and provided her a copy of Intel's disability appeal procedure. Id., Ex. 7, Docs. 240-46. Under the appeal procedure, a claimant may appeal an adverse benefit determination within 180 days of the Administrator's decision. Id., Ex. 7, Doc. 244.

On December 10, 2002, Plaintiff notified Matrix of her decision to appeal its decision, and requested a thirty-day extension of time in which to submit additional documents for the Appeals Committee's (the "Committee") consideration. Id., Ex. 7, Docs. 262-63. Matrix granted the requested extension of time. Id., Ex. 7, Docs. 255-59. A second extension was granted on January 8, 2003, extending the deadline to February 12, 2003. Id., Ex. 7, Docs. 247-48. During this time, Plaintiff submitted a letter from Dr. Castillo, a list of medications dated February 11, 2003, a Physical Capacities Assessment Form by Dr. Castillo, and a letter from Dr. Muriel McClellan. Id., Ex. 7, Docs. 190-201.

On December 23, 2002, Matrix requested an independent review of Plaintiff's claim file by a neurologist selected by CORE, an independent clearinghouse for medical peer reviews with no affiliation with either Matrix or Intel. Id., Ex. 7, Docs. 249-50. The Peer Review Analysis Case Report of Dr. Dennis Nitz acknowledged Dr. Walker's findings of hypomobility and spasm on the left side of Plaintiff's upper cervical spine, as well as X-ray indications of facet arthrosis in the lumbar spine, but noted that Plaintiff's neurological examinations and MRI's produced normal results. Id., Ex. 7, Docs. 2-5. Based on his review of the claim file, Dr. Nitz concluded that "[Plaintiff's] subjective complaints are not corroborated by any significant objective findings." Id.,

1  Ex. 7, Doc. 4.

2      On February 20, 2003, the Committee reviewed the original

3  claim file, Dr. Nitz's independent peer review report, as well as

4  all documents received from Plaintiff prior to that date.  Id., Ex.

5  2 ¶ 19.  The Committee determined that Matrix's initial denial of

6  benefits was proper, because the record did not present evidence of

7  a "disability" substantiated by "objective medical findings" as

8  those terms are defined in the Plan.  Id., Ex. 2, Attach. C.  As

9  before, the Committee explained this as the basis for its decision

10  in a letter dated March 11, 2003 reviewing Plaintiff's medical

11  history and the operative terms of the Plan.  Id.  This letter also

12  apprised Plaintiff of her rights under ERISA.  Id.

13      On March 11, 2004, Plaintiff filed a complaint (doc. # 1) in

14  this Court, later amended on August 9, 2004 (doc. # 14), seeking

15  retrospective and prospective relief under 29 U.S.C. § 1132.  On

16  December 12, 2005 the Court issued an order (doc. # 58) denying

17  Plaintiff's motion for summary judgment (doc. # 41) and granting

18  Defendants' motion for summary judgment (doc. # 33).  Judgment was

19  entered accordingly the same day.  Judgment (doc. # 59).  Plaintiff

20  now seeks reconsideration of the Court's December 12 order and

21  judgment.  Mot. (doc. # 60).

22  **II.   DISCUSSION**

23      The decision to grant or deny a motion for reconsideration is

24  left to the sound discretion of the trial court.  See Sch. Dist.

25  No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th

26  Cir. 1993).  Such motions are disfavored and, absent exceptional

27  circumstances, are generally only appropriate "if the district

28  court (1) is presented with newly discovered evidence; (2)

1   committed clear error or the initial decision was manifestly

2   unjust; or (3) if there is an intervening change in controlling

3   law." Id.

4         Plaintiff's motion (doc. # 60) is not premised on any newly

5   discovered evidence. Rather, Plaintiff contends that the Court

6   committed clear error in its resolution of the parties' cross-

7   motions for summary judgment (doc. ## 33, 41) based on the evidence

8   presented at that time. See Mot. (doc. # 60). In order to prove

9   that the Court committed clear error, Plaintiff must demonstrate

10   that the Court's action fell clearly outside the bounds of its

11   authority. McDowell v. Calerdon, 197 F.3d 1253, 1256 (9th Cir.

12   1999). If the propriety of the Court's judgment is a debatable

13   question, there is no clear error and the motion to reconsider is

14   properly denied. Id. Plaintiff also seeks additional discovery

15   pursuant to Rule 56(f). Reply (doc. # 65).

16         In addition, the parties have briefed the issue of a

17   supervening change in controlling law concerning the standard of

18   judicial review applicable in ERISA cases, as expressed in Abatie

19   v. Alta Health & Life Insurance Co., 458 F.3d 955 (9th Cir. 2006)

20   (en banc).

21         In Part A, below, the Court discusses the change in law

22   signaled by Abatie. The Court addresses Plaintiff's Rule 56(f)

23   request for additional discovery (doc. # 65), and Rule 60 motion

24   for reconsideration (doc. # 60) in Parts B and C respectively.

25       **A. Abatie v. Alta Health & Life Insurance Co.**

26         Plaintiff's motion (doc. # 60) was still pending at the time

27   of the Ninth Circuit's decision in Abatie, which overruled the

28   holding of Atwood v. Newmont Gold Co., 45 F.3d 1317 (9th Cir. 1995)

1   as being inconsistent with Supreme Court precedent.

2       The Supreme Court has long held that the decision of an ERISA

3   plan administrator vested with discretion to interpret plan terms

4   and make benefits determinations is reviewed for abuse of

5   discretion.  <u>Firestone Tire & Rubber, Co. v. Bruch</u>, 489 U.S. 101,

6   111-15 (1989).  However, if the administrator is "operating under a

7   conflict of interest, that conflict must be weighed as a factor in

8   determining whether there is an abuse of discretion."  <u>Id.</u> at 115

9   (internal quotations omitted).  For many years, the Ninth Circuit

10  interpreted this language in <u>Firestone</u> as requiring "heightened

11  scrutiny" of decisions made by conflicted plan administrators, but

12  only if the beneficiary could produce "material, probative

13  evidence" tending to show that the administrator's apparent

14  conflict actually caused a breach of a fiduciary duty owed to the

15  beneficiary.  <u>Atwood</u>, 45 F.3d at 1322.  If the beneficiary made

16  this showing, the burden shifted to the plan to demonstrate that

17  the administrator's decision was not tainted by the apparent

18  conflict.  <u>Id.</u>  If the plan failed to meet its burden, the

19  administrator's decision was reviewed de novo.  <u>Id.</u>

20      In <u>Abatie</u>, the Ninth Circuit observed that the "heightened

21  scrutiny" test of <u>Atwood</u> placed "an unreasonable burden on ERISA

22  plaintiffs," and that its "back-and-forth burden shifting

23  disobey[ed] the Supreme Court's guidance" by allowing, in some

24  instances, de novo review where heightened abuse of discretion

25  should have been the standard.  <u>Abatie</u>, 458 F.3d at 966-67.  As the

26  Circuit has now clarified, "<u>Firestone</u> . . . require[s] abuse of

27  discretion review whenever an ERISA plan grants discretion to the

28  plan administrator, but a review informed by the nature, extent,

1  and effect on the decision-making process of any conflict of

2  interest that may appear in the record." Id. at 967.  This

3  standard applies to the kind of inherent or structural conflict of

4  interest that exists when an insurer acts as both the plan

5  administrator and funding source for benefits, without any

6  additional requirement that the claimant come forth with "smoking

7  gun" evidence of the administrator's motives.  Id. at 967-69.

8      The Court will apply Abatie in resolving Plaintiff's pending

9  motion for reconsideration (doc. # 60).[2]

10     **B. Rule 56(f) Request for Additional Discovery**

11     In her reply in support of her present motion, Plaintiff takes

12 the position that she should be entitled to further discovery

13 _____

14     [2]   Although Defendants have not challenged the retroactive
applicability of Abatie in this case, the Court explains why the new
15 rule will be applied in resolving Plaintiff's motion for
reconsideration.  Abatie does not involve a new constitutional rule.
16 In a non-constitutional context, three factors are relevant in
determining whether a judicial decision should be applied
17 retroactively: "(1) whether the decision establishes a new rule of
law; (2) whether retroactive application will further or retard the
18 purposes of the rule in question; and (3) whether applying the new
decision will produce substantially inequitable results." United
19 States v. Oliveros-Orosco, 942 F.2d 644, 646-47 (9th Cir. 1991).
"Although not constitutionally mandated, retroactive application of
20 judicial decisions is the rule and not the exception." United States
v. Gonzalez-Sandoval, 894 F.2d 1043, 1052 (9th Cir. 1990) (quotations
21 omitted).
     Under the three-part analysis of Oliveros-Orosco, the Court is
22 satisfied that retroactive application is appropriate in this case.
First, Abatie did not announce a new rule of law, but merely
23 corrected the Ninth Circuit's interpretation of Firestone.  Second,
retroactive application will further ERISA's purposes of "promot[ing]
24 the interests of employees and their beneficiaries in employee
benefit plans" and "protect[ing] contractually defined benefits," and
25 remain more faithful to the principles of trust law that informed the
Supreme Court's decision in Firestone.  See Firestone Tire & Rubber
26 Co., 489 U.S. at 113-14.  Third, no facts have been presented
indicating that it would be substantially inequitable to apply Abatie
27 in determining the standard of review applicable to the
administrator's decision.

28

- 9 -

1  pursuant to Fed. R. Civ. P. 56(f) on the basis that <u>Abatie</u> has

2  expanded the scope of discovery on conflict of interest issues

3  beyond that which could reasonably have been foreseen when <u>Atwood</u>

4  was the law.  Reply (doc. # 65) at 2-4, n.1.  Plaintiff claims that

5  she previously "conducted limited discovery on the conflict of

6  interest issue and adhered to <u>Atwood</u> by limiting same to that which

7  she believed would lead to 'smoking gun evidence.'" <u>Id.</u> at 4 n.1.

8       The Court is mindful that "[o]rdinarily summary judgment

9  should not be granted where there are relevant facts yet to be

10  discovered." <u>See Taylor v. Sentry Life Ins. Co.</u>, 729 F.2d 652, 656

11  (9th Cir. 1984) (citation omitted).  However, it is the

12  responsibility of the nonmoving party to show the trial court what

13  facts she would hope to discover to raise a genuine issue of

14  material fact.  <u>Id.</u>

15       In this instance, the deadline for discovery and dispositive

16  motions had passed at the time of the Court's consideration of the

17  parties' motions for summary judgment.  In her motion for summary

18  judgment, Plaintiff requested further discovery, claiming that she

19  first became aware of Intel's service agreement with Matrix -- and

20  presumably did not understand the need to inquire into that

21  arrangement, or the persons having knowledge of it -- until

22  Defendants had produced certain affidavits in support of their

23  motion for summary judgment.  Mot. (doc. # 41).  The Court believes

24  that Plaintiff was on sufficient notice to make such inquiry based

25  on her earlier receipt of communications showing that Matrix made

26  decisions under a Plan that she knew named Intel as administrator.

27  <u>See, e.g.</u>, DSOF, Ex. 2, Attach. C.  The record was therefore

28  sufficient for Plaintiff to devise a capable discovery plan to

1   probe into the nature of Intel's relationship with Matrix and any

2   ancillary issues that might illuminate the conflict issue.

3        Plaintiff's claim that her earlier discovery was limited to

4   the pursuit of "smoking gun evidence" as envisioned by <u>Atwood</u> is

5   likewise untenable.  <u>Atwood</u> speaks in terms of "material, probative

6   evidence," not smoking guns.  <u>See Atwood</u>, 45 F.3d at 1322-23.  In

7   the Court's view, all of the factors discussed in <u>Abatie</u> were at

8   least as relevant then as they are now.  Indeed, given Plaintiff's

9   heavier burden under <u>Atwood</u>'s all-or-nothing approach, there would

10  have been greater need for robust discovery into the conflict issue

11  at that time.  Therefore, Plaintiff's request for further discovery

12  pursuant to Rule 56(f) will be denied.

13       **C. Motion for Reconsideration**

14       In her motion for reconsideration, Plaintiff recites excerpts

15  of medical records and deposition transcripts, urging the Court to

16  conclude that the Administrator wrongly determined that her

17  migraine headaches were not substantiated by "objective medical

18  findings" as defined in the Plan.  <u>See</u> Mot. (doc. # 60) at 2-13.

19  Plaintiff's motion does not articulate whether she only seeks

20  reconsideration of the Court's conclusion that the Administrator

21  did not abuse its discretion in finding her ineligible for LTD

22  benefits, or whether she also seeks reconsideration of the Court's

23  decision to apply the abuse of discretion standard of review.

24  Because the Administrator's evaluation of the medical evidence is

25  relevant to both facets of the Court's decision, the Court will

26  consider both as possible arguments on this motion to reconsider.

27       **1. Standard of Judicial Review in § 1132 Actions**

28       The supervening change in controlling law signaled by <u>Abatie</u>

- 11 -

1    presents a subtle but potentially significant change in the

2    standard of review to be applied in this case.  The Court must

3    still review the Administrator's decision for abuse of discretion,

4    because the Plan grants Intel the sole discretion to interpret the

5    Plan's terms and to determine eligibility for benefits.  See DSOF,

6    Ex. 1, Attach. A at 13; Firestone Tire & Rubber, Co., 489 U.S. at

7    111-15.  However, the Court's abuse of discretion review must also

8    take into account "the kind of inherent conflict that exists when a

9    plan administrator both administers the plan and funds it."

10   Abatie, 458 F.3d at 967.  Such is arguably the case here, where

11   Intel is both the funding source for benefits and the named

12   administrator of the Plan-- a situation also referred to as a

13   "structural conflict of interest."[3]  DSOF, Ex. 1, Attach. A at 13;

14   Abatie, 458 F.3d at 965.

15   . . .

16

17        [3]  The Court was previously bound by Atwood and its progeny to
18   require Plaintiff to produce "material, probative evidence" showing
     that Intel's apparent conflict actually caused a breach of a
19   fiduciary duty owed to her.  See Atwood, 45 F.3d at 1322.  Noting
     that the appearance of conflict alone was not sufficient under the
20   Atwood regime, see, e.g., Friedrich v. Intel Corp., 181 F.3d 1105 at
     1109-11 (9th Cir. 1999), the Court explained at length why
21   Plaintiff's evidence failed to meet this burden under the Circuit's
     former "heightened scrutiny" test.  See Order (doc. # 58) at 9-19.
22   Accordingly, the Court applied abuse of discretion review.  Id. at
     19-21.  However, since Plaintiff had failed to establish a basis for
23   "heightened scrutiny," the Court gave no further consideration to the
     appearance of conflict in its abuse of discretion review.  See id.
24        Defendants claim that after deciding that "heightened scrutiny"
25   was not warranted, the Court applied abuse of discretion review, "but
     with due regard for the 'appearance of conflict' it perceived in
26   Matrix' position."  Resp. (doc. # 62) at 5.  This was not the case.
     See Order (doc. # 58) at 19-21.  As explained in Abatie, "Atwood
27   grants the deference due under trust law but skips the careful review
     that trust law demands of actions taken by obviously conflicted
28   parties."  Abatie, 458 F.3d at 967.  The Court will now undertake
     that more careful review.

1          **i. Structural Conflict of Interest**

2          Defendants argue that any structural conflict has been

3    effectively eliminated by Intel's delegation of its administrative

4    duties to Matrix.  Resp. (doc. # 62) at 4.  The parties have not

5    cited, nor has the Court uncovered, any precedent in this Circuit

6    indicating whether a structural conflict of interest can be

7    eliminated by contractually delegating authority to a third party

8    administrator.  As the Court previously noted, the Ninth Circuit

9    declined to address this specific question in Eley v. Boeing Co.,

10   945 F.2d 276, 278 (9th Cir. 1991).  Order (doc. # 58) at 10 n.2.

11   Nevertheless, the Court then expressed its view that "Intel's

12   delegation of authority to Matrix does not negate the appearance of

13   conflict, because Intel's financial influence over Matrix under the

14   Service Agreement renders Matrix susceptible to the taint of

15   Intel's conflict."  Id.  Thus, the Court concluded that "the fact

16   of Intel's contract with Matrix [would be] more appropriately

17   considered as one factor in determining whether the Administrator's

18   decision was actually tainted by conflict," see id. (emphasis

19   added), referring to the "heightened scrutiny" test of Atwood.

20         Along similar lines, the Ninth Circuit in Abatie has suggested

21   that a conflicted plan administrator may find it advisable to bring

22   forth affirmative evidence demonstrating "that it used truly

23   independent medical examiners or a neutral, independent review

24   process; that its employees do not have incentives to deny claims;

25   that its interpretations of the plan have been consistent among

26   patients; or that it has minimized any potential financial gain

27   through structure of its business." Abatie, 458 F.3d at 969, n.7

28   (emphasis added).  Although not explicitly stated, the Court

1   construes this language as implying that a company's delegation of

2   claims administration responsibilities, while not sufficient to

3   negate a structural conflict outright, is a significant factor in

4   assessing the impact of that conflict in an elevated abuse of

5   discretion review.

6        In contrast, the Third Circuit, which also applies heightened

7   abuse of discretion review in the face of a structural conflict,

8   see Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 390 (3d

9   Cir. 2000) (Becker, C.J.), has specifically held that heightened

10  review is ordinarily precluded where the plan administrator has

11  delegated its claims administration responsibilities to a third

12  party administrator, Kosiba v. Merck & Co., 384 F.3d 58, 61 (3d

13  Cir. 2004) (Becker, J.).  The Court would be inclined to follow

14  this approach.  However, inasmuch as the Ninth Circuit's Abatie

15  decision cites Pinto and Kosiba for other propositions, the Court

16  cannot be certain whether the Ninth Circuit would also hold that a

17  structural conflict is eliminated by delegating authority to a

18  third party administrator.  Indeed, a per se rule seems contrary to

19  the Circuit's broad statement that "[g]oing forward, plaintiffs

20  will have the benefit of an abuse of discretion review that always

21  considers the inherent conflict when a plan administrator is also

22  the fiduciary, even in the absence of 'smoking gun' evidence of

23  conflict."  See Abatie, 458 F.3d at 969 (emphasis added).

24  Accordingly, the Court will consider Intel's delegation to Matrix

25  as "affirmative evidence that any conflict did not influence its

26  decisionmaking process, evidence that would be helpful to

27  determining whether or not it has abused its discretion."  See id.

28  . . .

1

**ii. Weighing of the Structural Conflict in this Case**

2      "[A]buse of discretion review, with any 'conflict . . .

3   weighed as a factor,' . . . , is indefinite."[4]   Id. (citation

4   omitted).  The district court must tailor the intensity of its

5   review to fit the circumstances before it.  See id. at 968-69.

6              The level of skepticism with which a court
             views a conflicted administrator's decision may
7            be low if a structural conflict of interest is
             unaccompanied, for example, by any evidence of
8            malice, of self-dealing, or of a parsimonious
             claims-granting history.  A court may weigh a
9            conflict more heavily if, for example, the
             administrator provides inconsistent reasons for
10           denial, . . . ; fails adequately to investigate
             a claim or ask the plaintiff for necessary
11           evidence, . . . ; fails to credit a claimant's
             reliable evidence, . . . ; or has repeatedly
12           denied benefits to deserving participants by
             interpreting plan terms incorrectly or by
13           making decisions against the weight of evidence
             in the record.

14

15   Id. (citations omitted).  The district court may also consider

16   "evidence that any conflict did not influence [the administrator's]

17   decisionmaking process," e.g., "that it used truly independent

18   medical examiners or a neutral, independent review process; that

19   its employees do not have incentives to deny claims; that its

20   interpretations of the plan have been consistent among patients; or

21   that it has minimized any potential financial gain through

22   structure of its business."  Id. at 969, n.7.  In determining how

23   much weight to give a conflict under the abuse of discretion

24

_____

25       [4]  As the late Judge Becker of the Third Circuit observed, "there

26   is something intellectually unsatisfying, or at least discomfiting"
     in the "somewhat awkward" locution of a "heightened arbitrary and

27   capricious standard."  Pinto, 214 F.3d at 392.  Ultimately, the Third
     Circuit adopted an approach substantially similar to that articulated

28   in Abatie, albeit  under the metaphor of a sliding scale, which the
     Ninth Circuit "consciously reject[s]."  See Abatie, 458 F.3d at 967.

1    standard, the district court may look outside the administrative
2    record.  Id. at 970.

3        Beyond the fact that Intel is named as administrator and
4    fiduciary of the Plan, there is scant evidence warranting great
5    skepticism of the Administrator's decision.  Intel's delegation of
6    its claims administration responsibilities to Matrix under a
7    service agreement providing for a flat fee,[5] see DSOF, Ex. 2,
8    Attach. 1 at 3, together with the reliance on a "truly independent
9    medical examiner[]" selected by an independent clearinghouse for
10   medical peer reviews unaffiliated with either Matrix or Intel, see
11   id., Ex. 7, Docs. 249-50, strongly suggests that Intel's structural
12   conflict did not influence the decision making process.  See
13   Abatie, 458 F.3d at 969.  Moreover, as Defendants aptly point out,
14   Plaintiff has not come forth with "any evidence of malice, of
15   self-dealing, or of a parsimonious claims-granting history."  Resp.
16   (doc. # 62) at 4.  The absence of such evidence weighs in favor of
17   the Court's reviewing the Administrator's decision with a low level
18   of skepticism.  See Abatie, 458 F.3d at 968.

19       Factors that would lead the Court to weigh the conflict more
20   heavily are likewise missing.  The reasons for denial of
21   Plaintiff's application for benefits, initially and on

22

23       [5]  Plaintiff's reply suggests that Intel's oversight of the
24   appeal process renders its delegation to Matrix insufficient to
     seriously dispel the appearance of conflict. Reply (doc. # 65) at 4.
25   Plaintiff's argument might have greater merit if Intel had the power
     to review and reverse benefits determinations by Matrix that were
26   favorable to claimants.  It does not.  See DSOF, Ex. 1 ¶ 7.  The
     availability of a unilateral appeals process for the claimant's
27   benefit, along with Intel's delegation of responsibility to Matrix at
     the first level of review, are sufficiently strong indicia that
28   Intel's structural conflict of interest would not, on balance, have
     great effect in the decision-making process.

administrative appeal, have consistently been based on the lack of
"objective medical findings" to substantiate the existence of a
"disability" as those terms are defined under the LTD Plan.  DSOF,
Ex. 2, Attach. C; id., Ex. 7, Docs. 240-46.  Plaintiff's discovery
has not revealed a pattern of conduct in which the Administrator
has "repeatedly denied benefits to deserving participants by
interpreting plan terms incorrectly or by making decisions against
the weight of evidence in the record."  See Abatie, 458 F.3d at
968.  There is also no indication that the Administrator has
"fail[ed] . . . to [adequately] investigate a claim or ask the
plaintiff for necessary evidence, . . . [or] fail[ed] to credit a
claimant's reliable evidence."  See id.  Furthermore, as explained
in the Court's previous order, the Administrator's failure to
consider Plaintiff's Social Security disability award does not
warrant great skepticism, as the Plan and the Social Security Act
utilize markedly different definitions of disability.  See Order
(doc. # 58) at 16-19.  Finally, this is not a case in which there
have been any procedural irregularities under ERISA that would
require closer scrutiny of the administrator's decision.  See
Abatie, 458 F.3d at 971-73.

     While the Court is heedful of the fact that ERISA benefits
denial cases require "the district court . . . [to] mak[e]
something akin to a credibility determination about the insurance
company's or plan administrator's reason for denying coverage under
a particular plan and a particular set of medical and other
records," see id. at 969, Plaintiff has produced little evidence
that would create a genuine issue of material fact on these issues.
As the above discussion explains, the mere existence of the

1    structural conflict in this case is not significantly probative.

2    Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 ("If the

3    evidence is merely colorable, . . . , or is not significantly

4    probative, . . . , summary judgment may be granted.") (1986);

5    accord Cal. Architectural Build. Prods., Inc. v. Franciscan

6    Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987).  In sum, the Court

7    finds no basis from these facts and circumstances, beyond the mere

8    existence of Intel's structural conflict of interest, to view the

9    Administrator's decision with a degree of skepticism that would be

10   significantly more scrutinizing than an ordinary abuse of

11   discretion review.[6]

12       **2. Whether the Administrator Abused Its Discretion**

13       Thus far, the Court has explained that the supervening change

14   in controlling law requires a reformulation of the standard of

15   review.  A change in law alone, however, is not sufficient to

16   trigger relief under Rule 60.  See Cal. Med. Ass'n v. Shalala, 207

17   F.3d 575, 578 (9th Cir. 2000).  Rather, the Court will inquire anew

18   as to whether the Administrator abused its discretion in light of

19   the heightened abuse of discretion review required by Abatie.

20       An ERISA plan administrator abuses  its discretion if (1) it

21   renders a decision without any explanation, (2) it construes

22   provisions of the plan in a way that conflicts with the plain

23

24       [6]  The Court notes that the administrator's pursuit of the
     investigation, development of the record, and crediting of evidence,

25   as discussed in Abatie, are matters closely intertwined with the core
     abuse of discretion analysis.  Accordingly, the Court will address

26   those issues more fully in its abuse of discretion analysis at Part
     II.C.2.  For the present, it is sufficient to note that neither of

27   those factors, nor any others mentioned in Abatie or in Plaintiff's
     briefs, are sufficient to warrant great skepticism of the

28   administrator's decision, even in the face of Intel's structural
     conflict.

1    language of the plan, or (3) it relies on clearly erroneous

2    findings of fact in making benefit determinations.  <u>Taft v.</u>

3    <u>Equitable Life Assurance Soc'y</u>, 9 F.3d 1469, 1472-73 (9th Cir.

4    1993).  Because an administrator cannot abuse its discretion by

5    failing to consider evidence that was never before it, the Court's

6    review is limited to evidence that was part of the administrative

7    record.  <u>See</u> <u>id.</u> at 1471-72.  The Court acknowledges that Intel's

8    dual role as administrator and fiduciary of the Plan presents a

9    structural conflict of interest, but, for the reasons explained

10    above, accords that conflict little weight in deciding whether

11    there are any genuine issues of material fact as to whether the

12    Administrator abused its discretion.

13       As the Court previously held, there is no evidence that the

14    Administrator either construed the Plan provisions contrary to

15    their plain meaning or relied on clearly erroneous findings of fact

16    in making its benefit determination.  <u>See</u> Order (doc. # 58) at 19-

17    21.  Rather, the thrust of Plaintiff's argument is that the Court

18    committed error in concluding that the Administrator wrongly

19    determined that her migraine headaches were not substantiated by

20    "objective medical findings" as defined in the Plan.  <u>See</u> Mot.

21    (doc. # 60) at 2-13.

22       As bases for reconsideration, Plaintiff now contends (1) that

23    Dr. Nitz did not convey a clear opinion regarding "objective

24    medical findings," (2) that the Court misconstrued Dr. Hetrick's

25    reference to the "etiology" of Plaintiff's headaches as suggesting

26    a lack of "objective medical findings," Mot. (doc. # 60) at 13-15,

27    (3) that Matrix inadequately investigated the claim, or developed

28    the record, by relying on Dr. Nitz's opinion, which evaluated the

1    opinion of Dr. Nachmanson, who apparently was not provided with a

2    complete medical record, and (4) that there are no documents in the

3    record to show that Intel's appeal committee reviewed Plaintiff's

4    medical records or her appeal, or to set forth the conclusions

5    reached by the appeal committee, Reply (doc. # 65) at 5-8.

6        **i. Dr. Nitz's Opinion on "Objective Medical Findings"**

7        Plaintiff complains that Dr. Nitz merely opined "that he does

8    not believe the medical findings to be <u>significant enough</u> to

9    support the impairments." Mot. (doc. # 60) at 13.  While it is

10   true that Dr. Nitz concluded that "[Plaintiff's] subjective

11   complaints [we]re not corroborated by significant objective

12   findings," DSOF, Ex. 7, doc. 4, the Court does not agree with

13   Plaintiff's suggestion that Dr. Nitz improperly infused a

14   subjective level of analysis not contemplated by the Plan.  The

15   Plan's layered definition of "objective medical findings" calls for

16   "a measurable abnormality . . . <u>the significance</u> [of which] . . .

17   [is] <u>understood and accepted by the medical community</u>."  DSOF, Ex.

18   1, Attach. A at 4 (emphasis added).  As such, Dr. Nitz's reference

19   to "significant objective findings" is entirely appropriate under a

20   proper construction of the Plan's terms, and therefore a suitable

21   basis for the Administrator's decision.  The Court's view does not

22   change in view of Intel's structural conflict, especially as the

23   facts indicate that Dr. Nitz was a "truly independent medical

24   examiner."  <u>See</u> <u>Abatie</u>, 458 F.3d at 969 n.7; DSOF Ex. 7, Docs.

25   249-50.

26       **ii. Etiology and "Objective Medical Findings"**

27       Plaintiff argues that "Dr. Hatrick's [sic] statement that the

28   etiology of . . . [her] headaches is unknown is not evidence of a

1  lack of objective medical findings."  Mot. (doc. # 60) at 14.

2  Etiology is "a branch of science dealing with the causes of

3  particular phenomena."  Webster's Third New International

4  Dictionary 782 (1981).  In the medical context it is defined as

5  "all the factors that contribute to the occurrence of a disease or

6  abnormal condition."  Id.  Plaintiff notes that "[t]here are many

7  diseases substantiated by objective medical findings for which the

8  etiology is unknown."  Mot. (doc. # 60) at 14.  While that may be

9  true as a general proposition, the two concepts are not wholly

10  separable here, as the Plan's definition of "objective medical

11  findings" requires at least some etiological connection between the

12  observed abnormalities and the claimed disability.  An "objective

13  medical finding" under the Plan requires the presence of "a

14  measurable abnormality . . . the significance [of which] . . . [is]

15  understood and accepted by the medical community."  DSOF, Ex. 1,

16  Attach. A at 4.  Thus, Dr. Hetrick's statement that "[n]one of

17  the[] studies were able to provide a clue of the etiology of . . .

18  [Plaintiff's] head pain," DSOF, Ex. 7 at 16, suggests that, even if

19  the studies reflect measurable abnormalities, the significance of

20  those abnormalities is not fully understood or accepted by the

21  medical community.  The resolution of such a close question of

22  interpretation is not amenable to reconsideration on the basis of

23  clear error.[7]  See McDowell, 197 F.3d at 1256.

24

25      [7]  As the Third Circuit has noted, "in some contexts it may not
be arbitrary and capricious to require clinical evidence of the
26  etiology of allegedly disabling symptoms."  Mitchell v. Eastman Kodak
Co., 113 F.3d 433, 442-43 (3d Cir. 1997).  While the Mitchell court
27  found an etiological evidence requirement to be arbitrary and
capricious in the context of a plan using a definition of disability
28  substantially similar to that of the Social Security Act, see id. at
439, 442-43, it specifically contemplated that it may be appropriate

**iii. Failure to Provide Medical Records to Dr. Nachmanson**

In her motion for summary judgment, Plaintiff argued that Matrix's limited provision of medical records to Dr. Nachmanson is similar to Intel's conduct in <u>Friedrich</u>, where the Ninth Circuit affirmed the district court's application of <u>de novo</u> review based, in part, on the administrative record's lack of written reports by the beneficiary's treating physicians. Mot. (doc. # 41) at 15; <u>see</u> <u>Friedrich v. Intel Corp.</u>, 181 F.3d 1105, 1110 (9th Cir. 1999). The Court rejected that argument, distinguishing <u>Friedrich</u> on the basis of the more serious procedural irregularities present in that case. Order (doc. # 58) at 11-12. The Court also commented that Dr. Nachmanson's IME report was given in reference to Plaintiff's application for short-term disability benefits, not LTD benefits, and that Matrix considered the full record in reaching its decision on LTD benefits. <u>Id.</u> at 13.

Plaintiff now claims that the Court's analysis was in error, because Matrix relied on Dr. Nitz's opinion, which concluded that Dr. Nachmanson's opinion was not supported by "objective medical findings." It is important that Plaintiff does not challenge the adequacy of the record reviewed by Dr. Nitz, but maintains that Intel's filtration of information to Dr. Nachmanson adversely affected her application for LTD benefits. <u>See</u> Reply (doc. # 65) at 6-7. This argument eludes any logical explanation. If the

---

in the context of another plan. The ultimate question is one of reasonable expectations. Based on the LTD Plan's narrow definitions of "disability" and "objective medical findings," the Court finds that the Plan imparts sufficient notice to beneficiaries that some etiological connection is necessary. In any event, there is sufficient evidence in the record to support the Administrator's denial of benefits without reference to Dr. Hetrick's opinion.

1  record was deliberately filtered, one might have expected Dr.

2  Nachmanson to deliver an unfavorable opinion resulting in the

3  denial of Plaintiff's application for short-term disability

4  benefits.  That did not happen.  Even if Dr. Nachmanson had been

5  provided with the full record, it is unclear how that would have

6  altered his opinion, let alone that of Dr. Nitz.  Dr. Nachmanson's

7  opinion on short-term disability benefits would not have addressed

8  the more elaborate definition of "objective medical findings" found

9  only in the LTD Plan.  In any event, Dr. Nitz, who gave an opinion

10  on "objective medical findings" under the LTD Plan, apparently had

11  the full record at his disposal when formulating his report.  See

12  DSOF, Ex. 7, Doc. 002-004 (discussing Plaintiff's medical history,

13  including treatment by Drs. Hetrick and Castillo).  Even

14  considering the structural conflict of interest, the Court still

15  concludes that no reasonable trier of fact could find that the

16  limited provision of records to Dr. Nachmanson, or Matrix's

17  subsequent reliance on the opinion of Dr. Nitz, amounted to an

18  abuse of discretion.

19       **iv. Documentation of Appeal Committee's Review**

20       Plaintiff contends that "[t]here are no documents provided by

21  Defendants to show that the appeal committee reviewed [her] medical

22  records or her appeal, nor is there any document setting forth the

23  conclusions reached by said appeal committee."  Reply (doc. # 65)

24  at 5-6.  She asks the Court to disregard a number of Defendants'

25  affidavits that are outside the administrative record.  Id.

26       Although Plaintiff failed to raise this specific argument in

27  her original motion for summary judgment, see Mot. (doc. # 41) at

28  19, the Court notes now that it would not change the outcome.  The

1  documentation Plaintiff seeks can be found in Matrix's letter of

2  March 11, 2003, summarizing the conclusions of the appeal committee

3  and identifying the medical records reviewed in reaching those

4  conclusions.  DSOF, Ex. 2, Attach. C.

5      For the foregoing reasons, the Court concludes that

6  reconsideration is not warranted on the basis of either clear error

7  or the supervening change in controlling law.  Having weighed

8  Intel's structural conflict of interest as a factor in its abuse of

9  discretion review, as required under Abatie, the Court still finds

10 that there are no triable issues for this case to proceed to trial.

11 At best, the slightly elevated review presents a colorable issue,

12 but such evidence is insufficient for a nonmoving party to survive

13 summary judgment.  See Anderson, 477 U.S. at 249-50; accord Cal.

14 Architectural Build. Prods., Inc., 818 F.2d at 1468 (9th Cir.

15 1987).  No other bases for reconsideration of the Court's order and

16 judgment (doc. ## 58-59) are argued or present.

17     **IT IS THEREFORE ORDERED** that Plaintiff's request for

18 additional discovery pursuant to Rule 56(f) of the Federal Rules of

19 Civil Procedure is DENIED.

20     IT IS FURTHER ORDERED that Plaintiff's motion for

21 reconsideration (doc. # 60) is DENIED.

22     DATED this 20th day of September, 2006.

23

24

25 _____

26     Robert C. Broomfield
        Senior United States District Judge

27

28 Copies to counsel of record

- 24 -